IN THE

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

NO. 22-20100
_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*
v.

TRAVIS DEMOIS WILSON,
*Defendant-Appellant*
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION, NO. 4:18-CR-714-04
_____

**ORIGINAL BRIEF FOR THE APPELLANT**
**TRAVIS DEMOIS WILSON**
_____

SAMUEL H. WINSTON, La. Bar No. 34821
JEIGH L. BRITTON, La. Bar No. 39820
Winston Bergeron, LLP
8120 Oak Street
New Orleans, Louisiana 70118
Telephone: 504-577-2500
Facsimile: 504-577-2562
E-Mail: sam@winstonbergeron.com
jeigh@winstonbergeron.com

**ATTORNEYS OF RECORD FOR APPELLANT**

# I. CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of these proceedings. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

Judges:
The Honorable Keith P. Ellison
United States District Court Judge
Southern District of Texas (Houston)

The Honorable Christina A Bryan
United States District Court Magistrate Judge
Southern District of Texas (Houston)

Appellee:
The United States of America

Attorneys for Appellee:
Alamdar Hamdani
United States Attorney, Southern District of Texas

Carmen Castillo Mitchell (on appeal)
Assistant United States Attorney

Celia Moyer (in the district court)
Assistant United States Attorney

Nancy G Herrera (in the district court)
Assistant United States Attorney

Richard Wesley Bennett (in the district court)
Assistant United States Attorney

Appellant:
Travis Demois Wilson

Attorneys for Appellant:
Samuel H. Winston (on appeal)
Appellate Counsel

Jeigh L. Britton (on appeal)
Appellate Counsel

Prior counsel for Appellant:
David Cunningham (on appeal and at sentencing)
Andrew Williams (Trial)
Tyrone C. Moncriffe (Pretrial)
Michael Essmyer (Pretrial)


New Orleans, Louisiana, this 31st day of January, 2024.

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON, La. Bar No. 34821

## II. STATEMENT REGARDING ORAL ARGUMENT

Undersigned counsel asserts that the errors made by the trial court on the motion to suppress can be adequately decided by the briefing. However, counsel is ready, willing, and able to participate in oral argument should the Court so desire.

# III. TABLE OF CONTENTS

I.    CERTIFICATE OF INTERESTED PERSONS .......................... ii

II.   STATEMENT REGARDING ORAL ARGUMENT ................... iv

III.  TABLE OF CONTENTS .................................................. v

IV.   TABLE OF AUTHORITIES ............................................ vii

V.    JURISDICTIONAL STATEMENT ..................................... 1

VI.   STATEMENT OF ISSUES ............................................. 1

VII.  STATEMENT OF THE CASE ........................................ 2

VIII. SUMMARY OF THE ARGUMENT ................................... 7

IX.   ARGUMENT .............................................................. 8

  A.  The Appellant's Fourth Amendment right against
  unreasonable Government search and seizure was violated
  when Sgt. Moore conducted an illegal traffic stop and Deputy
  Miranda illegally searched his bag. ................................. 8

    i.    Standard of Review ................................................ 8

    ii.   Constitutional Standard ........................................... 9

    iii.  The Appellant had standing to contest the validity of a traffic
    stop and the search. .................................................. 10

    iv.   Traffic Stop Legal Standard: Terry v. Ohio .............. 12

    v.    There was no reasonable suspicion to perform the initial traffic
    stop. ......................................................................... 13

    vi.   Even assuming arguendo that there was reasonable suspicion
    for the initial traffic stop, the scope of the detention and search
    exceeded the purpose of the stop. ................................ 17

    vii.  Evidence derived from the illegal search and seizure is fruit of
    the poisonous tree. .................................................... 21

  B.  The district court abused its discretion in failing to hold an
  evidentiary hearing on the motion to suppress. .............. 22

    i.    Relevant Facts ...................................................... 22

    ii.   Standard of Review ............................................... 23

iii.  Discussion ................................................................. 23

**X.  CONCLUSION** ................................................................ **25**

**XI.  CERTIFICATE OF SERVICE** ......................................... **26**

**XII.  CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** .......... **26**

# IV. TABLE OF AUTHORITIES

## Cases

*Brendlin v. California*, 551 U.S. 249 (2007) ........................................... 10

*Florida v. Royer*, 460 U.S. 491 (1983) ..................................................... 18

*Holmquist v. State*, No. 05-13-01388-CR, 2015 WL 500809, at *5 (Tex. App. Feb. 5, 2015) ................................................................................. 17

*Maryland v. Wilson*, 519 U.S. 408 (1997) ............................................... 12

*Ohio v. Robinette*, 519 U.S. 33 (1996) ..................................................... 18

*State v. Dixon*, 151 S.W.3d 271 (Tex. App. 2004), aff'd, 206 S.W.3d 587 (Tex. Crim. App. 2006) ........................................................................ 16, 17

*State v. Griffin*, 2003 WL 21018319 (Tex.App.-San Antonio 2003) ....... 15

*Terry v. Ohio*, 392 U.S. 1 (1968)................................................... 12, 13, 18

*United States v. Andres*, 703 F.3d 828 (5th Cir. 2013) ............................. 9

*United States v. Barber*, 777 F.3d 1303 (11th Cir. 2015) ....................... 10

*United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004) .................. 13, 19

*United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) ........................... 18

*United States v. Cervantes*, 797 F.3d 326 (5th Cir. 2015) ........................ 8

*United States v. Dortch*, 199 F.3d 193 (5th Cir. 1999), opinion corrected on denial of reh'g, 203 F.3d 883 (5th Cir. 2000) .................................. 22

*United States v. Estrada*, 459 F.3d 627 (5th Cir. 2006) ......................... 18

*United States v. Gibbs*, 421 F.3d 352 (5th Cir. 2005)............................... 9

*United States v. Harrelson*, 705 F.2d 733 (5th Cir. 1983) ............... 23, 24

*United States v. Iraheta*, 764 F.3d 455(5th Cir. 2014) ................. 9, 10, 11

*United States v. Johnson*, No. 07-30955, 2008 WL 3876550, at *3 (5th Cir. Aug. 21, 2008)................................................................................. 11

*United States v. Matlock*, 415 U.S. 164 (1974) ................................. 23, 24

*United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014) ..................... 8, 9

*United States v. Roman*, 849 F.2d 920 (5th Cir. 1988)........................... 11

*United States v. Santiago*, 310 F.3d 336 (5th Cir. 2002)...... 12, 18, 19, 21

*United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993)........................... 9

*United States v. Villafranco-Elizondo*, 897 F.3d 635 (5th Cir. 2018)..... 19

*United States v. Wallen*, 388 F.3d 161 (5th Cir. 2004) ........................... 23

*Whren v. United States*, 517 U.S. 806 (1996).................................... 18, 19

## Statutes

18 U.S.C. § 2 ................................................................................................ 6

18 U.S.C. § 3742 .......................................................................................... 1

18 U.S.C. § 922(g)(1) ....................................................6

18 U.S.C. § 924(a)(2) .....................................................6

18 U.S.C. § 924(c)(1)(A)(1) ...........................................6

21 U.S.C. § 841(a)(1) ..................................................5, 6

21 U.S.C. § 841(b)(1)(A)(viii) ......................................5, 6

21 U.S.C. § 846 ..............................................................5

28 U.S.C. § 1291 ............................................................1

Tex. Transp. Code § 545.104(b) ...................................16

Texas Transportation Code § 545.060 ..........................14

## Constitutional Provisions

U. S. Const., Amend. IV .........................................9, 18, 23

## Rules

Fed. R. App. P. 4 ..........................................................1

Fed. R. Crim. P. 41(e) .................................................23

## V.  JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. This is a direct appeal from a final decision of the United States District Court for the Southern District of Texas, Houston Division, entering a judgment of conviction and imposing a total 322-month term of imprisonment on February 16, 2022. ROA.462-468. The Appellant timely filed a notice of appeal and an amended notice of appeal on February 17 & 18, 2022, respectively, which complies with Fed. R. App. P. 4. ROA.454-459.

## VI.  STATEMENT OF ISSUES

1. Whether the Appellant's Fourth Amendment right against unreasonable seizures was violated when Sgt. Moore conducted an illegal stop without a violation of traffic laws.

2. Whether the Appellant's Fourth Amendment right against unreasonable searches was violated when Sgt. Moore exceeded the scope of the illegal traffic stop by searching the Appellant's bag.

3. Whether the district court abused its discretion when it failed to grant the Appellant a hearing for his motion to suppress the illegal search and seizure conducted by Sgt. Moore and other law enforcement.

# VII. STATEMENT OF THE CASE

This case is about an unlawful traffic stop and subsequent unlawful seizure and search of a bag that Travis Demois Wilson, the Appellant, was holding as the front-seat passenger of the vehicle that was stopped.

On April 4, 2017 Crystal Jones and the Appellant were driving in the Houston area in a white Dodge Charger. ROA.661-663, 619-620. Ms. Jones was driving and the Appellant was in the front passenger seat. ROA.661-663, 619-620.

Sergeant Chris Moore from the Harris County Sheriff's Office was on duty with his K-9 that day. ROA.616-619, 180. Sgt. Moore was then contacted by Deputy Greg Raider from a narcotics task force for the express purpose of conducting a traffic stop for Deputy Raider as part of a narcotics investigation. ROA.618.

Sgt. Moore said his specific instructions were to "locate the suspect vehicle, obtain *my own* probable cause for a traffic stop and conduct a stop." ROA.618-619 (emphasis added). Sgt. Moore's role in the drug investigation was limited to conducting the stop – he did not participate in or have any knowledge of the investigation prior to the call he received

from Deputy Raider requesting that he find his own independent probable cause for a stop. ROA.651.

At some point, Sgt. Moore located the vehicle in question, which was the white Dodge that Ms. Jones and the Appellant were driving, and pulled behind it. ROA.619. Sgt. Moore then initiated a traffic stop following a left turn that the Appellant's car made. ROA.621-626, 180-181.

While the Government and trial counsel for the Appellant would later debate both the specific, second-by-second facts and the law of the traffic stop, Sgt. Moore's dashboard camera recorded the entire thing. ROA.187[1], 620.

As seen on the dashcam video, Ms. Jones and the Appellant were almost immediately taken out of the car after being stopped. ROA.187. Sgt. Moore asserted that Ms. Jones was very nervous and the Appellant had made "furtive" movements, though this is not fully apparent from the video itself. ROA.625-635,187. Sgt. Moore was cross-examined about

---

[1] The dashcam video of the traffic stop is referenced as an electronic attachment to the motion to suppress litigation that took place before the district court. ROA.187. However, ROA.187 itself is just the placeholder piece of paper referencing the actual video exhibit. Therefore, all citations to ROA.187 in this brief are meant to refer to the actual video itself, which, undersigned counsel understands from calling the Clerk's office, is in fact in the possession of the Court.

his assertions of nervousness and purported furtive movements by trial counsel for the Appellant. ROA.651-652. Sgt. Moore conceded he could not actually see if the Appellant was trying to hide anything from his vantage point. ROA.653.

Deputy Sandor Miranda of the Harris County Sheriff's Office also arrived in a separate patrol unit to support Sgt. Moore just after Ms. Jones and the Appellant were pulled over. ROA.187, 695. Deputy Miranda approached the Appellant in the passenger seat and asked the Appellant for identification. ROA.187, 696-697. Deputy Miranda stated the Appellant appeared nervous upon handing over his identification. ROA.697.

Deputy Sandor noticed a brown backpack between the Appellant's feet. ROA.696 (Government Exhibit 21). The deputy then asked the Appellant to step out of the vehicle. ROA.187, 697. Upon the Appellant's stepping out of the vehicle, Deputy Miranda asserted that he noticed a weapon magazine sticking out from underneath the backpack. ROA.697. The Appellant was then placed in handcuffs and put in the patrol car. ROA.698, 187.

Sgt. Moore then ran his K-9 around the vehicle, who purportedly hit on the car. ROA.187, 699. The officers searched the car and then inside the backpack and found approximately 1.2 kilos of methamphetamine in the backpack and a firearm underneath the backpack. ROA.699-700, 644, 187.

The Appellant was indicted with four others for conspiracy with intent to distribute a schedule II controlled dangerous substance, namely 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(l), and 841(b)(l)(A)(viii). ROA.23-24. He was also charged with possession with intent to distribute a schedule II controlled dangerous substance, namely 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(l) and 841(b)(l)(A)(viii), and Title 18, United States Code, Section 2. ROA.24.

On May 26, 2021, the Appellant was then charged by superseding indictment with four new counts:

Count 1: Conspiracy to Possess with Intent to Distribute a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii).

Count 2: Possession with Intent to Distribute a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), and 18 U.S.C. § 2.

Count 3: Carrying a Firearm during and in relation to a Drug Trafficking offense and Possession of a Firearm in furtherance of a Drug Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(1).

Count 4: Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

After some preliminary proceedings, trial counsel for the Appellant filed a motion to suppress the evidence from the traffic stop. ROA.100-104, 111-132. The Government opposed the suppression motion. ROA.107-109, 156-187. The district court held a status conference on the initial filing of the suppression motion but did not hold an evidentiary hearing. ROA.480-494. The district court issued a written ruling denying the Appellant's motion to suppress. ROA.188-194

On May 21, 2022, the Appellant's case went to trial. ROA.504-795. The Government called four witnesses in its case-in-chief – Sgt. Moore (ROA.622-655), Crystal Jones (ROA.656-74), Deputy Miranda (ROA.693-704), and FBI case agent Francisco Ng. (ROA.710-744). The Defense

moved for a judgment of acquittal on all counts. ROA.745-749. The district court denied the motion. ROA.745-749.

The district court sentenced the Appellant to 262 months on Counts One and Two, and 120 Months on Count Four, all to be served concurrently. ROA.462-468. The district court then imposed a 60-month sentence on Count Three to be served consecutively, which gave the Appellant a total sentence of 322 months. ROA.462-468.

This timely appeal now follows.

## VIII. SUMMARY OF THE ARGUMENT

The district court erred in denying the Appellant's motion to suppress evidence obtained from an unconstitutional stop. The Appellant, as a passenger, has standing to challenge the validity of the seizure of his person and search of his personal items. The Appellant contests the search and seizure for two reasons.

First, the evidence was insufficient to support the district court's finding that there was reasonable suspicion to perform the initial traffic stop because the vehicle did not violate Texas traffic laws. Second, even if there was reasonable suspicion for the initial stop, the scope of the detention and search was not reasonable as the officers' conduct was not

reasonably related to the circumstances that justified the stop. Because the stop was invalid, the evidence should have been suppressed as fruit of the poisonous tree.

Moreover, the district court also erred in failing to hold an evidentiary hearing before denying the motion to suppress. The district court's summarily decided findings of fact and conclusions of law on the motion were unsupported by the record and the law.

## IX. ARGUMENT

**A. The Appellant's Fourth Amendment right against unreasonable Government search and seizure was violated when Sgt. Moore conducted an illegal traffic stop and Deputy Miranda illegally searched his bag.**

### i. *Standard of Review*

"When reviewing a denial of a motion to suppress evidence, this Court reviews factual findings for clear error and the ultimate constitutionality of law enforcement action de novo." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). This de novo review includes the district court's legal conclusions, including the conclusion on whether reasonable suspicion existed to perform a traffic stop. *United States v. Cervantes*, 797 F.3d 326, 328 (5th Cir. 2015). The clearly erroneous part of the standard of review regarding factual findings is particularly

deferential when "the denial of a suppression motion is based on live oral testimony…because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014) (*citing United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005)).

"Whether a defendant has standing to question the legality of a search is a question of law subject to de novo review." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014).

## ii. *Constitutional Standard*

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U. S. Const., Amend. IV. A traffic stop is a seizure within the meaning of the Fourth Amendment. *United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993). The protection of the Fourth Amendment extends "to vehicle stops and temporary detainment of a vehicle's occupants." *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013) (*citing United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993)).

### iii. The Appellant had standing to contest the validity of a traffic stop and the search.

A passenger with no ownership interest in a vehicle can challenge evidence discovered as a result of an allegedly illegal traffic stop of the vehicle, because the stop and the detention that follows constituted a seizure of the persons of everyone in the vehicle. *Brendlin v. California*, 551 U.S. 249 (2007). The district court here correctly held that the Appellant had standing to challenge the validity of the traffic stop. ROA.191.

However, the district court erroneously concluded that the Appellant did not have standing to contest the subsequent search as a passenger. ROA.193-194. Standing does not require ownership interest in the invaded area and passengers may contest searches of their personal items, if they assert a possessory interest. *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014); *see also United States v. Barber*, 777 F.3d 1303, 1305 (11th Cir. 2015) (a passenger in a car had standing to challenge the search of his bag even if he lacked standing to contest the search of the car).

In *Iraheta*, the passengers had standing to challenge the search of the duffle bag in the vehicle in which they were riding because neither

passenger denied ownership of the bag nor abandoned the bag prior to the search. *Compare Iraheta*, 764 F.3d at 462, *with United States v. Johnson*, No. 07-30955, 2008 WL 3876550, at *3 (5th Cir. Aug. 21, 2008) (holding that a defendant had no standing when he had abandoned a fanny pack by leaving it on another's property prior to the search) *and United States v. Roman*, 849 F.2d 920, 922 (5th Cir. 1988) (holding that a defendant had no standing because he had abandoned his luggage prior to search). Although the Appellant lacked ownership interest in the rental car, he had possessory interest in his personal bags inside the rental car.

Specifically, the suppression motion to the district court contested the search for several reasons including that the Appellant "never gave his consent to any search of the vehicle, his bags, books, phone or other items…" ROA.101. The police reports do not provide any information that the bag was not in the Appellant's possession at the time of the seizure, that the Appellant denied ownership of the bag he was holding between his feet, or that he attempted to abandon the bag prior to the search. ROA.180-181, 184. Quite the contrary, he was securing the backpack when Deputy Miranda approached him. ROA.696-698.

Additionally, the dashcam footage does not indicate a denial of ownership or attempt to abandon any property. Moreover, the district court made its conclusion without holding an evidentiary hearing or giving the Appellant an opportunity to present evidence on this issue or cross-examine the officers. As such, the Appellant had standing to challenge the search of his backpack.

### iv.    *Traffic Stop Legal Standard: Terry v. Ohio*

The validity of traffic stops is analyzed under *Terry v. Ohio*, which held that limited searches and seizures are lawful when there is reasonable suspicion that a person has committed a crime. *See United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002) (*citing Terry v. Ohio*, 392 U.S. 1, 29 (1968)). A seizure under the Fourth Amendment must be objectively reasonable in light of the particular circumstances of the case. *Maryland v. Wilson*, 519 U.S. 408, 411 (1997); *Terry*, 392 U.S. at 21.

The legality of police investigatory stops is a two-part test: (1) the Court must examine whether the officer's action was justified at its inception; and (2) inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop.

*United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (*citing Terry*, 392 U.S. at 19-20).

When conducting this two-part test, courts are required to consider the facts and circumstances of each case, giving deference to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the length of detention, were reasonable under the circumstances. *Brigham*, 382 F.3d at 507.

### v.  *There was no reasonable suspicion to perform the initial traffic stop.*

Without an evidentiary hearing and without supporting testimony from the arresting officers, the district court erroneously found that there was reasonable suspicion for the initial traffic stop. ROA.193. On the day of the traffic stop, Sgt. Moore was "asked to be the marked unit or the official police in uniform in a marked car to conduct a traffic stop as a result of a narcotics investigation… I was to locate the suspect vehicle, obtain my own probable cause for a traffic stop and conduct a traffic stop." ROA.618.

Although Sgt. Moore testified that "agents had been following and had information and were watching the suspect locate and obtain what

they believed to be narcotics," he admitted on cross examination that his role in the drug investigation was limited solely to conduct the stop – he did not participate in or have any knowledge of the investigation prior to the call he received from Deputy Raider requesting the stop. ROA.651.

The Government alleged that Sgt. Moore initiated the traffic stop for a violation of Texas Transportation Code sections 545.060 and 545.104(b). ROA.191. Texas Transportation Code § 545.060 provides that an "operator on a roadway divided into two or more *clearly marked* lanes for traffic: (1) shall drive *as nearly as practical* entirely within a single lane…" (emphasis added). The statute here provides for some level of out of bounds driving as it is impractical to require a driver to stay inside a lane that is not clearly marked.

Here, the left-most turn lane was also a U-turn lane and no cars were waiting in this lane. ROA.187 (see actual video). The right-most turn lane allowed for cars to turn or go straight to enter onto the freeway. ROA.187. The outermost dashed lines of the turn lanes disappear at the intersection and there are additional dashed lines intersecting over the lanes to direct other intersecting directions of traffic. ROA.187.

Moreover, there were no drivers in the left most lane and all drivers in the dashcam footage are seen turning left from the right turn lane. ROA.187. All drivers, including Sgt. Moore's following patrol car that stopped the Appellant, did not remain inside the dashed lines of the lane. ROA.187.

Therefore, because the dashed lanes are not consistently marked, the vehicle drove "nearly as practical" with those turn dashed lanes that were present. This was not a violation of the Texas Transportation Code - as such, this conduct did not create reasonable suspicion for Sgt. Moore to stop the vehicle.

In *State v. Griffin*, the court determined that an officer did not have reasonable suspicion to stop a defendant for failure to maintain a single marked lane, for failing to signal a lane change, and for drifting onto the shoulder, where evidence was presented that the defendant's vehicle never fully left its own lane of traffic, that the movements made by the defendant's vehicle were not unsafe, that the defendant drove on the shoulder of the road to allow the officer to pass him, and that the defendant did not signal when pulling onto the shoulder which was not a lane. 2003 WL 21018319 (Tex.App.-San Antonio 2003).

Similarly, the vehicle where the Appellant was a passenger did not fully leave its lane of traffic and the movements were not unsafe as there were only cars in one of the turn lanes. ROA.187.

Moreover, the vehicle where the Appellant was a passenger also did not violate § 545.104(b). Section 545.104(b) provides that an "operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." Tex. Transp. Code § 545.104(b).

However, the conduct of Ms. Jones, the driver, does not fall within the plain meaning of the statute, as supported by the dashcam footage. ROA.187. Because there was not 100 feet of movement before the turn, it would have been impossible to comply with this 100-feet requirement.

In *State v. Dixon*, the trial court found that the traffic stop was invalid because the turns made by the defendant's vehicle were lawful. 151 S.W.3d 271, 273 (Tex. App. 2004), aff'd, 206 S.W.3d 587 (Tex. Crim. App. 2006). As a result, the trial court granted the defendant's motion to suppress the narcotics found subsequent to the invalid stop. *Id.* at 272. The court of appeals affirmed the trial court's rulings. *Id.* at 275.

Similar to the instant case, the vehicle in *Dixon* made a turn in a dedicated turn lane and signaled the turn but allegedly did not signal within 100 feet of the intersection. *Id.* at 272. Several cars preceding the car the Appellant was a passenger in also did not use their turn signal. The left-most turn lane also allowed for the driver to continue straight onto the interstate.

Admittedly, there is differing case law on this issue. *See* ROA.192. *See also e.g. Holmquist v. State*, No. 05-13-01388-CR, 2015 WL 500809, at *5 (Tex. App. Feb. 5, 2015) (unreported). However, *Dixon* should be controlling because the other authorities relied on by the district court were unpublished and themselves provided conflicting interpretations of the *Dixon* case and this issue. *See* ROA.192. Accordingly, the traffic stop was not reasonable based on the actions of vehicle. Therefore, there was no violation of the Texas Traffic Code and the traffic stop was unconstitutional.

### vi. *Even assuming arguendo that there was reasonable suspicion for the initial traffic stop, the scope of the detention and search exceeded the purpose of the stop.*

Even if the initial traffic stop was valid, which it was not, the scope of the detention was also unreasonable because it exceeded the purpose

of the initial stop and violated the Fourth Amendment. To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate its original purpose. *Florida v. Royer*, 460 U.S. 491, 500 (1983). During a traffic stop, an officer can request license, insurance, and registration, and run a computer check for outstanding warrants, but cannot extend the detention beyond the valid reason for the stop. *United States v. Santiago*, 310 F.3d 336, 341 (5th Cir. 2002).

The stop and inquiry must be reasonably related in scope to the justification for their initiation. *Terry v. Ohio*, 392 U.S. 1, 29 (1968); *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975). Once the traffic stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (Ginsburg, J. *concurring*). The detention may be extended if during the initial stop further reasonable suspicion is developed that is supported by articulable facts. *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006).

Although under *Wren v. United States*, the officers' pretextual or subjective motivations for an initial traffic stop are not relevant to the inquiry of whether there was reasonable suspicion for the initial stop, it

is certainly relevant to consider the objective accounts of arresting officers and the actual and admitted pretext of Sgt. Moore in determining the reasonableness of his actions thereafter. 517 U.S. 806, 812 (1996); *See United States v. Villafranco-Elizondo*, 897 F.3d 635, 641 (5th Cir. 2018) ("subjective motivations of police are deemed irrelevant as long as their conduct does not exceed what they are objectively authorized to do"). Essentially the question is whether the conduct of the arresting officers was reasonably related to the circumstances that justified the stop or if they had developed newly-formed suspicion to broaden the scope of the initial stop. *See Villafranco-Elizondo*, 897 F.3d at 642; *see also United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004).

Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inference from those facts, reasonably warrant search and seizure. *Id.* Mere "uneasy feelings" and inconsistent stories between a driver and a passenger do not constitute articulable facts that support a reasonable suspicion of drug trafficking. *Id.* (*citing United States v. Santiago*, 310 F.3d 336, 338–39 (5th Cir. 2002)).

In the instant case, no inconsistent stories from the driver and the Appellant were reported or can be witnessed in the video. ROA.187 (report & video). Moreover, the officers provided differing accounts of the occupants' behavior and demeanor between the initial report and their later testimony at trial. These inconsistencies call into question the reasonableness of having the occupants exit the vehicle and the subsequent search.

For example, Sgt. Moore, already aware of the true purpose of the traffic stop, reported that once the vehicle was stopped, he observed the driver to "be shaking visibly and to appear nervous." ROA.181, 184, 629, 631. He also said he observed the Appellant to be shaking, looking around, and attempting to grip or manipulate a brown backpack between his legs. ROA.181.

Yet Deputy Miranda did not report or testify to the same level of extreme nervousness from the Appellant and he was the one who had primary contact with the Appellant on the passenger side of the car. ROA.184, 187, 696-698. Deputy Miranda also did *not* testify that he observed the Appellant making any furtive movements regarding the backpack. ROA.184, 696-698.

Sgt. Moore also said in his report that he had the vehicle occupants exit the vehicle based on the nervousness of the car occupants. ROA.181. Yet it was not until the Appellant exited the vehicle that both officers said they noticed that the bottom part of a gun was partially protruding from underneath the backpack. ROA.184, 654. The officers later testified that they had removed the defendants from the vehicle for "officer safety" even though they did not see a gun until after the Appellant's exit. ROA.638, 654-655.

The officers here did not have a reasonable basis to detain the vehicle occupants beyond the initial stop and order them out of the vehicle. See *Santiago*, 310 F.3d at 341. Because the officers' conduct was not reasonable, the subsequent search was invalid.

### vii. *Evidence derived from the illegal search and seizure is fruit of the poisonous tree.*

Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the constitutional violation. *United States v. Dortch*, 199 F.3d 193,

200–01 (5th Cir. 1999), opinion corrected on denial of reh'g, 203 F.3d 883 (5th Cir. 2000).

Assuming arguendo that probable cause existed for the search of the vehicle and the Appellant's personal items when the K-9 alerted to the passenger side of the vehicle, such probable cause would not have come about or existed if the prior unlawful stop and detention had not occurred. Thus, the pistol and the contents of the bag would not have been discovered but for the invalid seizure. Thus, the district court erred in failing to suppress this evidence.

## B. The district court abused its discretion in failing to hold an evidentiary hearing on the motion to suppress.

### i. *Relevant Facts*

Prior to trial, the Appellant moved to suppress the evidence seized from the traffic stop where he was the passenger and requested an evidentiary hearing be held. ROA.101-104, 111-132. The Appellant argued that the evidence should be suppressed on the basis that the traffic stop was not supported by reasonable suspicion and the scope of the detention exceeded the purpose of the initial stop. ROA.111-132. The

district court denied the motion to suppress without holding an evidentiary hearing. ROA.188-194.

### ii.     *Standard of Review*

A district court's decision not to conduct an evidentiary hearing on a motion to suppress is reviewed for an abuse of discretion. *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983).

### iii.    *Discussion*

Under the Fourth Amendment, warrantless searches are presumptively unreasonable, and the Government has the burden of proving by a preponderance of the evidence the existence of circumstances that justify a warrantless search. *United States v. Wallen*, 388 F.3d 161, 164 (5th Cir. 2004). The Government also bears the burden of proving at a suppression hearing by a preponderance of the evidence that the Fourth Amendment has not been violated. *United States v. Matlock*, 415 U.S. 164, 177 (1974).

Under Federal Rule of Criminal Procedure 41(e), an evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact. *United States v. Harrelson*, 705 F.2d

733, 737 (5th Cir. 1983). Evidentiary hearings are necessary when the defendant alleges sufficient facts which, if proven, would justify relief. *Id*.

The Appellant laid out the facts of the video in great detail in his suppression motion. ROA.113-123. Inconsistencies in the officer's report and the video regarding the initial stop warranted an evidentiary hearing. For example, some of the behaviors that Sgt. Moore characterized as suspicious, including that the driver of the vehicle was circling the parking lot and potentially trying to flee, is not supported by the video. ROA.180.

Testimony from the arresting officers was not heard before the district court denied the Appellant's suppression motion nor was the Appellant allowed to cross-examine these officers prior to the motion's denial. If an evidentiary hearing would have been granted the details of the search and seizure could have been cross-examined and the officers' credibility could have been appropriately evaluated, especially considering that it is the Government's burden to demonstrate reasonable suspicion. *See Matlock*, 415 U.S. at 177.

Additionally, the district court summarily decided that the Appellant did not have standing to challenge the scope and

reasonableness of the search and seizure of the stop because the Appellant was a passenger. ROA.193. However, as discussed above, the Appellant did have standing to challenge this. Because the district court summarily decided this issue without an evidentiary hearing, the district court made no findings of fact related to the reasonableness of the officers nor conclusions of law of whether the officers had reasonable suspicion to extend the stop and search the vehicle and the Appellant's personal items. Accordingly, the district court abused its discretion in failing to hold an evidentiary hearing.

## X. CONCLUSION

For the foregoing reasons, this Court should reverse Mr. Travis Demois Wilson's conviction and sentence because of the constitutional violations and the district court's errors.

Respectfully submitted,

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON, La. Bar. No. 34821
JEIGH L. BRITTON, La. Bar No. 39820
Winston Bergeron, LLP
8120 Oak Street
New Orleans, Louisiana 70118
Telephone: 504-577-2500
Facsimile: 504-577-2652
Email: sam@winstonbergeron.com
jeigh@winstonbergeron.com

## XI.   CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice and a copy of the electronic filing via email to counsel for the Government.

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON
Attorney for Appellant

## XII.   CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,824 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word version 16.74 in Century Schoolbook 14 pt.

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON
Attorney for Appellant