**No. 22-20100**

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

TRAVIS DEMOIS WILSON,
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
For the Southern District of Texas
Houston Division, Case No. 4:18-cr-00714-04

_____

BRIEF OF PLAINTIFF-APPELLEE

_____

ALAMDAR S. HAMDANI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

AUDREY LYNN MANESS
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary as the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF AUTHORITIES......................................................v

STATEMENT OF JURISDICTION..........................................1

STATEMENT OF THE ISSUES.............................................2

STATEMENT OF THE CASE ...............................................3

    A.    Course of Proceeding and Disposition Below .........................3

    B.    Statement of Facts ...............................................3

        1.    Wilson is arrested and indicted ....................................3

        2.    The district court denies Wilson's motion to suppress...........................................................4

        3.    A jury finds Wilson guilty on all counts and the district court sentences Wilson to 322 months' imprisonment .............................................10

        4.    Wilson appeals .............................................11

SUMMARY OF THE ARGUMENT .......................................12

ARGUMENT ..............................................................14

Issue I: The district court did not err in denying Wilson's motion to suppress because both the traffic stop and the subsequent search were reasonable. .............................14

    A.    The standard of review is de novo. .............................14

## TABLE OF CONTENTS, cont'd

B. The district court did not err in denying Wilson's motion to suppress because the traffic stop was justified at its inception (Appellant's Issue #1). ........... 14

    1. The traffic stop was justified because Sergeant Moore observed the Dodge Challenger commit traffic violations. ................. 15

    2. To the extent Sergeant Moore was mistaken that a traffic violation had occurred, that mistaken belief was objectively reasonable and the stop was still justified. ........................... 20

C. The officers' actions were reasonably related in scope to the circumstances of the traffic stop (Appellant's Issue #2) .................................................. 23

D. The district court did not err in determining that Wilson as a passenger had no privacy interest in the rented Dodge Challenger and thus no standing to challenge the search. ................................ 27

E. The district court did not err in denying Wilson's motion to suppress because, even if Wilson had standing to challenge the search of the Challenger and items within, the search was reasonable. ................................................................. 29

Issue II: The district court correctly exercised its discretion in denying Wilson's request for an evidentiary hearing. ..... 31

A. This Court reviews for abuse of discretion. ................. 31

B. The district court did not abuse its discretion in denying Wilson's request for a hearing because the facts and record were largely undisputed. ............ 31

# TABLE OF CONTENTS, cont'd

**Page**

CONCLUSION ...........................................................................36

CERTIFICATE OF SERVICE...............................................37

CERTIFICATE OF COMPLIANCE.......................................38

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Brendlin v. California*, 551 U.S. 249 (2007) ........................................... 16

*Diaz v. State*, 2009 WL 2195427 (Tex. App.—Austin July 23, 2009)
(unpublished) .................................................................................. 17

*Florida v. Harris*, 568 U.S. 237 (2013) ................................................... 30

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................. 23

*Heien v. North Carolina*, 574 U.S. 54 (2014) .......................................... 20

*Illinois v. Caballes*, 543 U.S. 405 (2005) ................................................ 29

*Leming v. State*, 493 S.W.3d 552 (Tex. Crim. App. 2016) ...................... 21

*Mahaffey v. State*, 316 S.W.3d 633 (Tex. Crim. App. 2010) ................... 17

*Maryland v. Wilson*, 519 U.S. 408 (1997) ............................................... 33

*Ornelas v. United States*, 517 U.S. 690 (1996) ....................................... 14

*Pennsylvania v. Mimms*, 434 U.S. 106 (1977) ..................... 23, 26, 33, 34

*Rakas v. Illinois*, 439 U.S. 128 (1978) ............................................. 27, 28

*Rodriguez v. United States*, 575 U.S. 348 (2015) ................................... 25

*State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App. 2006) ................... 16, 17

*State v. Hardin*, 664 S.W.3d 867 (Tex. Crim. App. 2022) ...................... 23

*Terry v. Ohio*, 392 U.S. 1 (1968) ........................................................... 23

*Turner v. State*, 261 S.W.3d 129 (Tex. Ct. App. 2008) ........................... 18

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                                     **Page(s)**

*United States v. Alfaro*, 638 F. App'x 374 (5th Cir. 2016)
    (unpublished)................................................................32

*United States v. Banuelos-Romero*, 597 F.3d 763 (5th Cir. 2010)..........14

*United States v. Cedillo*, 855 F. App'x 954 (5th Cir. 2021)
    (unpublished)..........................................................20, 21

*United States v. Clark*, 577 F.3d 273 (5th Cir. 2009) .............................31

*United States v. Guerra*, 605 F. App'x 295 (5th Cir. 2015)
    (unpublished)................................................................34

*United States v. Harrelson*, 705 F.2d 733 (5th Cir. 1983) .......... 31, 32, 34

*United States v. Hinojosa*, 392 F. App'x 260 (5th Cir. 2010)
    (unpublished)................................................................34

*United States v. Ibarra-Sanchez*, 199 F.3d 753 (5th Cir. 1999) .............26

*United States v. Iraheta*, 764 F.3d 455 (5th Cir. 2014) ..........................27

*United States v. Lee*, 2023 WL 2573917 (5th Cir. 2023)
    (unpublished)................................................................32

*United States v. Lopez-Moreno*, 420 F.3d 420 (5th Cir. 2005)...............14

*United States v. Pack*, 612 F.3d 341 (5th Cir. 2010) .......................20, 27

*United States v. Sanchez-Pena*, 336 F.3d 431 (5th Cir. 2003)...............30

*United States v. Seals*, 987 F.2d 1102 (5th Cir. 1993)...........................30

*United States v. Shelton*, 337 F.3d 529 (5th Cir. 2003) .........................14

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                                    **Page(s)**

*United States v. Smith*, 977 F.3d 431 (5th Cir. 2020) ............................ 31

*United States v. Thompson*, 540 F. App'x 445 (5th Cir. 2013)
      (unpublished)................................................................... 34

*United States v. Valenzuela-Godinez*, 816 F. App'x 914
      (5th Cir. 2020) (unpublished).................................................. 21, 22

*United States v. Walker*, 49 F.4th 903 (5th Cir. 2022) ........................... 15

*Wehring v. State*, 276 S.W.3d 666 (Tex. Ct. App. 2008) ......................... 16

## Rules and Statutes

Fed. R. App. P. 4(a)(2) .............................................................. 1

Fed. R. App. P. 4(b)(1)(A)(i)........................................................ 1

Fed. R. App. P. 34(a)(2)(C) ......................................................... i

5th Cir. R. 28.2.2 ................................................................... 1

18 U.S.C. § 2 ....................................................................... 3

18 U.S.C. § 924(a)(2)................................................................ 3

18 U.S.C. § 924(c) .................................................................. 3

18 U.S.C. § 3231 .................................................................... 1

18 U.S.C. § 3742(a)................................................................. 1

18 U.S.C. § 922(g)(1)............................................................... 3

**Rules and Statutes**                                    **Page(s)**

21 U.S.C. § 841(b)(1)(A)(ii) ............................................................ 3

21 U.S.C. § 841(a)(1) ..................................................................... 3

21 U.S.C. § 846 ............................................................................. 3

28 U.S.C. § 1291 ........................................................................... 1

Texas Transportation Code § 545.060 ......................................... 21

Texas Transportation Code § 545.060(a) ................................ 18, 19

Texas Transportation Code § 545.104(b) .............................. 5, 9, 15

## STATEMENT OF JURISDICTION

Defendant-Appellant Travis Demois Wilson appeals from the judgment imposed by the district court (Ellison, J.) on February 16, 2022, and entered March 4, 2022. ROA.18, 20, 462.[1] The district court had jurisdiction under 18 U.S.C. § 3231. Wilson timely filed a notice of appeal on February 18, 2022, pursuant to Fed. R. App. P. 4(a)(2) and (b)(1)(A)(i). ROA.19, 457. This Court's jurisdiction vests under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[1] "ROA" refers to the record on appeal, which is cited in accordance with 5th Cir. R. 28.2.2. "PSR" refers to the presentence investigation report, with all addenda, which is cited by paragraph number(s).

# STATEMENT OF THE ISSUES

The first issue on appeal is whether the district court correctly denied Wilson's motion to suppress and specifically whether the district court rightly found that the traffic stop of the Dodge Challenger was justified at its inception and appropriate in scope.

The second issue is whether the district court acted within its discretion in denying Wilson's request for an evidentiary hearing given that the facts regarding the traffic stop were largely undisputed.

## STATEMENT OF THE CASE

### A.    Course of Proceeding and Disposition Below

Wilson was indicted on one count of conspiring to possess with intent to distribute a controlled substance under 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii); one count of possessing with intent to distribute the same under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 18 U.S.C. § 2; one count of carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and a felon-in-possession count under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  ROA.23, 287.  The district court denied Wilson's motion to suppress, and a jury found Wilson guilty on all counts.  ROA.188, 389.  The district court sentenced Wilson to a total of 322 months' imprisonment and five years of supervised release. ROA.18, 462.  Wilson timely appealed. ROA.454.

### B.    Statement of Facts

1.    <u>Wilson is arrested and indicted</u>

On April 4, 2017, Harris County Sheriff Deputies observed the driver of a white Dodge Challenger commit two traffic violations when she turned left off the northbound Eastex Freeway service road on to eastbound FM-1960 in Harris County, Texas.  ROA.100-01 (Wilson's

motion to suppress); ROA.863; PSR ¶ 19. Wilson's girlfriend was the driver; Wilson was a passenger. ROA.101. The officers stopped the vehicle and ultimately found in the passenger footwell a gun with an extended high-capacity magazine attached as well as 1.2 kilograms of methamphetamine in a backpack. ROA.863; PSR ¶ 19. Wilson and his girlfriend were arrested, booked in the Harris County Jail, and later indicted on narcotics and gun charges. ROA.23, 863; PSR ¶ 19.

2. The district court denies Wilson's motion to suppress

Wilson moved to suppress the evidence stemming from the traffic stop. ROA.100. He argued that the stop was improper, that he was questioned without being given a *Miranda* warning, and that the search of the vehicle, and specifically Wilson's belongings within the vehicle, was made without valid consent. ROA.102-03. The government opposed and asked the district court to deny Wilson's motion without a hearing because he "failed to allege any material facts with any particularity as required" by S.D. Tex. Crim. Local Rule 12.2. ROA.107.

Wilson then filed a supplemental motion, arguing that (1) he had standing to challenge the stop and search, (2) there was no reasonable suspicion or probable cause to support the stop, and (3) even if the stop

was valid, the officers exceeded the justified scope of the stop. ROA.112. Wilson detailed the dashcam video, which showed the white Dodge Challenger driven by Wilson's girlfriend waiting several cars back in a lane without a turn signal on, proceeding forward, signaling once it entered the intersection, and as it turned left, crossing the dashed white line delineating the outside turn lane from the inside turn lane:



ROA.113-14; GX-3. Wilson noted that the outside turn lane allowed a driver to turn left or proceed straight. ROA.125, n.5.

Wilson argued that the government erroneously relied on a perceived violation Texas Transportation Code § 545.104(b) to justify the

stop. ROA.124. That provision requires an operator intending to turn right or left to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." Wilson said that there was not 100 feet of movement before the turn, so it was impossible to comply with the 100-foot requirement, and § 545.104(b) "by its plain language applies only to vehicles that are *in movement* and not stopped in a marked turn lane that is controlled by a traffic light." ROA.124 (emphasis in original). Wilson said that a driver could decide to turn left instead of proceeding straight "as the vehicle progresses" into the intersection, signal only at that point, and could do so without endangering others. ROA.125, n.5. Wilson cited cases holding that § 545.104(b) does not apply to (i) lane changes, (ii) exiting a freeway when the driver is not required to turn out of a lane, (iii) merging from an ending lane, or (iv) following the winding turns of a direct course road, but he did not cite a case addressing his specific situation: signaling only after entering an intersection in a lane that allows the driver to turn left or proceed straight. ROA.125-27.

The prosecutor asked the district court to deny Wilson's supplemental motion, explaining that there was reasonable suspicion to conduct a traffic stop and the deputies' subsequent actions and

6

questioning were reasonably related to the circumstances justifying the stop. ROA.134. The government described the two traffic violations that Harris County Sheriff Sergeant Moore believed he had observed: failure to signal a left turn in the 100 feet of movement approaching that turn and failure to maintain a single lane. ROA.136.

The government explained that, at the start of the traffic stop, the driver was visibly shaking and nervous. ROA.137. Both occupants denied that there were weapons or narcotics in the vehicle. ROA.137. Sergeant Moore noticed that Wilson was looking around the parking lot and, based on Sergeant Moore's training and experience, he believed Wilson was considering fleeing. ROA.137. Sergeant Moore asked the driver to exit the vehicle, and then joined Deputy Miranda—who arrived shortly after the stop as back-up—on the passenger side to assist. ROA.137. When Wilson exited the vehicle, Sergeant Moore saw the grip of pistol protruding from underneath a backpack that was at Wilson's feet on the floorboard. ROA.138. For safety reasons, Deputy Miranda handcuffed Wilson pending further investigation. ROA.138.

Because both Wilson and the driver lied about weapons in the vehicle, Sergeant Moore had his narcotics canine conduct a sniff around

the vehicle. The canine jumped on the driver's side of the Challenger and jumped through the open window of the passenger side, alerting to the backpack on the floorboard. ROA.138-39. The officers found in the backpack a Tupperware-style container that held white crystal shard material which tested positive for methamphetamine. ROA.139.

The firearm under the backpack was a Smith & Wesson 9mm pistol with an extended capacity magazine. The serial number had been partially removed. ROA.139. The officers checked Wilson's criminal history: he was a convicted felon. ROA.139.

The government also argued that Wilson, as a passenger, had standing to challenge the traffic stop but not the subsequent search of the vehicle. ROA.140-41. The government explained that the traffic violations established reasonable suspicion to stop the Challenger. ROA.143-44. And the government argued that the officers' questioning and actions were reasonably related to the circumstances justifying the stop. ROA.146-50. The government concluded its opposition by explaining that the warrantless search of the Challenger was justified by probable cause arising from the visibility of the firearm and the positive alert of narcotics from a certified canine. ROA.150-52.

The government attached to its motion the incident reports from Sergeant Moore and Deputy Miranda, which described the traffic stop in detail. ROA.180-82. It also submitted a copy of the video from Sergeant Moore's patrol car dashboard mounted camera. ROA.187.

The district court did not hold an evidentiary hearing but did issue a detailed order denying Wilson's motion to suppress, noting at the outset that it relied on the facts in Sergeant Moore's police report which were "largely uncontested by Defendant. Dash cam video corroborates many of the details." ROA.188. The district court described the observations of Sergeant Moore and the details of the traffic stop. ROA.188-90. In its analysis, the court explained that Wilson had standing as a passenger to contest the stop but found Wilson's challenges to the validity of the stop to be unpersuasive. ROA.191-92. It cited several Texas cases indicating that turning, even from a designated turn lane, is subject to Texas Transportation Code § 545.104(b), and it determined that the traffic stop was justified by the driver's failure to signal the turn. ROA.192-93.

The court also concluded the Wilson lacked standing to contest the reasonableness of the search of the Challenger. ROA.194. As the court explained, passengers do not have standing to contest searches of cars

they do not own, and while a passenger may contest searches of their personal items, Wilson did not assert a possessory interest in any of the materials seized from the car.  ROA.193-94.

3.  <u>A jury finds Wilson guilty on all counts and the district court sentences Wilson to 322 months' imprisonment.</u>

The government tried its case against Wilson to a jury over two days in July 2021.  ROA.14-15, 504-796 (trial transcript).  The jury returned a guilty verdict on all four counts.  ROA.389.  The details of the trial are not pertinent to the issues on appeal.

A probation officer prepared a presentence investigation report in advance of sentencing.  ROA.856.  The officer grouped all counts except the § 924(c) conviction for Guideline calculation purposes and determined Wilson's base and total offense level to be 34.  ROA.865-66; PSR ¶¶ 34, 36, 43.  Wilson had multiple prior convictions for battery against women, ROA.866-68; PSR ¶¶ 46, 47, 52; multiple convictions for resisting an officer, ROA.867-68; PSR ¶¶ 49, 50; multiple drug convictions, ROA. 870-71; PSR ¶¶ 55, 58; and one prior felon in possession of a firearm conviction in Louisiana.  ROA.872; PSR ¶ 59.  These convictions placed Wilson in Criminal History Category VI.  ROA.872; PSR ¶ 61.  This combined with the total offense level of 34 resulted in an advisory

guideline range of 262 to 327 months in prison. ROA.885; PSR ¶ 125. The § 924(c) count carried a statutory consecutive term of at least five years' imprisonment. ROA.885; PSR ¶ 126.

At sentencing, Wilson's counsel requested a downward variance. ROA.808. The government requested a low-end Guidelines sentence and the minimum consecutive sentence on the gun count, for a total of 322 months. The court expressed sympathy for Wilson's hardships but explained it did not see a reason for a below-guideline sentence: "This is one of the most serious records I've ever contemplated." ROA.812. The court imposed a low-end Guideline sentence of 262 months plus 60 months for the gun conviction, for a total of 322 months' imprisonment. ROA.812. The court also imposed a five-year term of supervised release, and a $400 special assessment but no other fine. ROA.812-13.

4.   Wilson appeals

Wilson timely appealed and challenges the district court's denial of his motion to suppress. ROA.454; Appellant's Br. at 12.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's denial of Wilson's motion to suppress.  The facts before the district court were undisputed: Sergeant Moore observed the driver of a Dodge Challenger activate the turn signal only after the Challenger entered an intersection and he saw the Challenger cross from the outside turn lane almost entirely into the inside turn lane and back out.  The district court correctly determined that Sergeant Moore had observed at least one traffic violation and therefore was justified in stopping the vehicle.

The court also did not err in determining that the stop was reasonable in scope.  Officers may ask occupants of a vehicle to exit during a traffic stop—they do not need any special justification to do so. And less than two minutes into the stop, and after the occupants told the officers there were no weapons or drugs in the vehicle, officers saw a gun in the passenger footwell.  The officers acted properly in using a drug dog to conduct an exterior sniff and, after the dog alerted, the officers had probable cause to search the vehicle and its contents.  Wilson, the passenger, did not assert any possessory interest in the vehicle or any

contents therein, and thus the district court did not err in determining that he lacked standing to contest the search.

The district court also did not err in denying Wilson's request for an evidentiary hearing.  As noted above, the facts were largely undisputed.  Wilson argues that the officers reported Wilson exhibited varying levels of nervousness during the stop.  To the extent that can be labeled a "disputed fact" it is immaterial—the officers' actions would have been justified even if Wilson had not been nervous at all.  And Wilson's other "disputed facts" are belied by the record and specifically the dash cam video recording of the stop and search.  Moreover, to the extent the district court erred in not holding a hearing, such error is harmless.  The factual issues Wilson believes merit further examination at a hearing are not material in deciding whether the traffic stop was justified and reasonable in scope.  Nor are they material to any challenge regarding the search of the vehicle's contents.  The purported disputes would not have impacted the district court's analysis and are harmless.  This Court should affirm.

**Issue I:    The district court did not err in denying Wilson's motion to suppress because both the traffic stop and the subsequent search were reasonable.**

**A.    The standard of review is de novo.**

In evaluating the district court's ruling on a motion to suppress, this Court reviews findings of fact for clear error and conclusions of law de novo.  *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).  The district court's finding that the facts provided reasonable suspicion or probable cause for a traffic stop is reviewed *de novo*.  *Ornelas v. United States*, 517 U.S. 690, 699 (1996).  But even under *de novo* review, the Court views the evidence in the light most favorable to the prevailing party—here, the government—and gives due weight to inferences drawn by the district court and local law enforcement.  *Lopez-Moreno*, 420 F.3d at 430 (citing *United States v. Shelton*, 337 F.3d 529, 532 (5th Cir. 2003) and *Ornelas*, 517 U.S. at 699).

**B.    The district court did not err in denying Wilson's motion to suppress because the traffic stop was justified at its inception (Appellant's Issue #1).**

The Fourth Amendment protects individuals from "unreasonable searches and seizures;" traffic stops are "seizures."  *United States v.*

*Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010). For a traffic stop to be reasonable, an officer must have—before stopping the vehicle—an objectively reasonable suspicion that illegal activity occurred or is about to occur. *Id.* Illegal activity includes a traffic violation. *Id.*; *United States v. Walker*, 49 F.4th 903, 907 (5th Cir. 2022).

### 1. The traffic stop was justified because Sergeant Moore observed the Dodge Challenger commit traffic violations.

Texas Transportation Code § 545.104(b) requires a driver intending to turn right or left to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." Wilson's girlfriend, Crystal Jones, was driving a Dodge Challenger northbound in a lane that permitted drivers to continue straight or turn left at an upcoming intersection. ROA.188. Sergeant Moore watched the Challenger, which was several vehicles back from the intersection, advance forward without a turn signal. ROA.188. Jones activated the Challenger's turn signal to indicate a left turn only after she had entered the intersection. ROA.187 (dash cam video); 188. The district court determined that, by failing to signal before the intersection, Jones violated § 545.104(b) and thus Sergeant Moore had probable cause to stop the vehicle. ROA.193.

Wilson, a passenger in the vehicle, argues that § 545.104(b) does not cover Jones' conduct because there was not 100 feet of movement before the turn, and thus it was impossible for Jones to comply with the statutory requirements. Appellant's Br. at 16.[2] The district court rejected this argument, citing *Wehring v. State*, 276 S.W.3d 666, 671 n.2 (Tex. Ct. App. 2008). ROA.193. The *Wehring* court explained that, when the lane markers designating a turn appear only 50 feet back from the intersection or designating turning point, a driver must indicate his intent to turn fifty feet before crossing those markers and must continue to indicate through the execution of the turn. The district court here found *Wehring* persuasive—a driver stopped at a traffic light in a designated turn lane must still signal his or her intent to turn and must do so in the 100 feet before the turn. ROA.193.

Wilson does not address *Wehring* in his brief. He argues that the holding in *State v. Dixon,* 206 S.W.3d 587 (Tex. Crim. App. 2006), controls: drivers do not need to signal turns made from a designated turn lane. Appellant's Br. at 16-17. But Texas courts have explained that the

---

[2] The government agrees that Wilson has standing to contest the validity of the traffic stop. *See* Appellant's Br. at 10; ROA.191 (district court order); *Brendlin v. California*, 551 U.S. 249 (2007).

issue in *Dixon* turned on credibility of the officer, not on an interpretation of § 545.104. "[T]he *Dixon* court did not determine that a turn signal is unnecessary when turning from a dedicated turn lane. Rather, the issue before the court was whether it was within the trial judge's discretion to decide whether to believe the arresting officer's assertion that he initiated the traffic stop for a traffic offense." *Diaz v. State*, 2009 WL 2195427, *2-3 (Tex. App.—Austin July 23, 2009).

Wilson acknowledges that other Texas cases conflict with *Dixon*, but he argues that *Dixon* should control "because the other authorities relied on by the district court were unpublished and themselves provided conflicting interpretations of the *Dixon* case and this issue." Appellant's Br. at 17. But the highest criminal court in Texas, the Court of Criminal Appeals, has confirmed that *Dixon* was not about what the law required; it was about the trial court's credibility finding. *Mahaffey v. State*, 316 S.W.3d 633, 639 n.32 (Tex. Crim. App. 2010).

Moreover, the situation here is different than in *Dixon*. *Dixon* addressed a dedicated right turn lane. 206 S.W.3d at 589. The lane here was not dedicated to turning: as the district court noted, the lane allowed a driver to proceed straight through the intersection *or* turn left.

ROA.193 (citing *Turner v. State*, 261 S.W.3d 129, 132-33 (Tex. Ct. App. 2008)). *Turner* expressly distinguished *Dixon*, crediting the trial court's finding that a lane that permits a vehicle to continue forward or turn right is not a "designated turn lane" and requires drivers to activate their turn signal if they intend to turn. 261 S.W.3d at 133. *Turner* supports the district court's finding that Jones and Wilson were not in a dedicated turn lane and thus were required to signal their intent to turn left as they approached the intersection. ROA.193. Because they failed to do so, Sergeant Moore had reasonable suspicion (if not probable cause) to believe that Jones had committed a violation.

The failure to signal was not Sergeant Moore's only reason for stopping the Dodge Challenger. He also saw the Challenger cross into the inside turn lane as it executed the turn from the *outside* turn lane. ROA.113-14; GX-3. Texas Transportation Code § 545.060(a) states:

> An operator on a roadway divided into two or more clearly marked lanes for traffic:
>
> (1) shall drive as nearly as practical entirely within a single lane; and
> (2) may not move from the lane unless that movement can be made safely.

Sergeant Moore believed that Jones, the driver, had violated § 545.060(a) when she failed to drive as nearly as practical entirely within a single lane. ROA.180 (Sergeant Moore police report).

Wilson argues that Jones complied with the transportation code because the dashed lines dividing the two turn lanes were not consistently marked and thus she drove "nearly as practical" in the lines that were present. Appellant's Br. at 15. But Jones' did not slightly veer out of the marked lane. She drove almost entirely out of the lane and then back in. As the district court explained, "the car did not follow the dashed lines indicating a single lane, instead crossing over inside the dashed lines and then back outside when completing the turn." ROA.188. In other words, Jones did not drive "as nearly as practical entirely within a single lane." Sergeant Moore had good reason to believe that Jones had committed a second traffic violation—specifically, a violation of Texas Transportation Code § 545.060(a).

Wilson also suggests that Jones' movement from the outside turn lane to the inside turn lane was safe because there were no cars in the inside lane. But there were cars in the outside lane, and Sergeant Moore could have reasonably believed that Jones' movement back into the

outside lane—a rightward movement taken while her left turn signal was activated—was unsafe given the traffic around her.[3]

> ## 2. To the extent Sergeant Moore was mistaken that a traffic violation had occurred, that mistaken belief was objectively reasonable and the stop was still justified.

Wilson argues that no traffic violations occurred, and Sergeant Moore was mistaken in believing otherwise. But a law enforcement officer's reasonable suspicion can rest on a mistaken understanding of the law so long as the mistake is objectively reasonable. *United States v. Cedillo*, 855 F. App'x 954, 955 (5th Cir. 2021) (unpublished) (citing *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). To the extent Sergeant Moore was wrong and Jones was not required to signal or required to maintain her lane, Moore's mistaken belief was reasonable.

First, it was reasonable for Sergeant Moore to believe that Jones had violated the law by not timely signaling her intent to turn. Wilson himself acknowledges that the case law differs on this issue. Appellant's Br. at 17. Wilson argues that *Dixon* should control, but as explained

---

[3] The district court based its reasonable suspicion finding on the violation of § 545.104(b), not § 545.060(a). ROA.4-6. But this Court may affirm on any basis established in the record, and the record demonstrates that Sergeant Moore reasonably believed that Jones had violated both § 545.104(b) *and* § 545.060(a). *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).

above, *Dixon* has been distinguished by other Texas courts and limited to situations involving dedicated turn lanes. The lane here was not a dedicated turn lane. ROA.188. Moreover, to the extent the law is unsettled and there is a divide in Texas state courts over the meaning of § 545.014(b), Sergeant Moore's belief that a violation had occurred was consistent with at least some of those state cases and was therefore reasonable even if mistaken. *See United States v. Valenzuela-Godinez*, 816 F. App'x 914, 918 (5th Cir. 2020) (unpublished).

Second, it was reasonable for Sergeant Moore to believe that Jones also violated the law when she crossed into the inside turn lane and back to the outside turn lane while executing the left-hand turn. This Court dealt with a similar situation in *Cedillo*, where an officer had stopped Cedillo for failing to maintain a single lane of traffic. 855 F. App'x at 955. The Court concluded that the officer reasonably suspected Cedillo of violating Texas Transportation Code § 545.060—failure to maintain a single lane—and even if the officer had "erred in determining that he had a legal basis to stop Cedillo's vehicle, his mistake of law was objectively reasonable." *Id.* (citing *Leming v. State*, 493 S.W.3d 552, 556 (Tex. Crim. App. 2016), which disagreed with Texas courts of appeal holdings that a

violation of Section 545.060 occurs only when a person fails to maintain a single lane *unsafely*).

Similarly, in *Valenzuela-Godinez*, the appellant argued that evidence should have been suppressed because an officer's traffic stop of the defendant's vehicle was not justified when the officer observed the vehicle drift over the fog line several times over a ten-minute period, believing it to violate § 545.060(a). 816 F. App'x at 915-16. This Court explained that Texas cases were divided on whether a defendant must *unsafely* fail to maintain a lane to violate § 545.060(a). And it ultimately disagreed with the defendant:

> Valenzuela-Godinez argues that because the Fourth Court of Appeals in San Antonio (which has jurisdiction over appeals from La Salle County courts [where the stop occurred]) held twenty-one years ago in *State v. Arriaga* that the State must prove both prongs of § 545.060(a), its precedent controls. Relying on the *Arriaga* decision, Valenzuela-Godinez maintains that [Officer] Zertuche's understanding of the statute was unreasonable. We disagree. In light of the statute's ambiguous text, coupled with the clear divide among Texas courts over its meaning, we hold that Zertuche's belief that Valenzuela-Godinez broke the law by failing to maintain a single lane of traffic, even if mistaken, was objectively reasonable.

*Id.* at 918. This Court should follow the path forged in *Cedillo* and *Valenzuela-Godinez*. Sergeant Moore observed Jones fail to maintain her

lane of traffic. His belief that she therefore violated § 545.060(a), even if ultimately mistaken, was objectively reasonable.[4]

## C. The officers' actions were reasonably related in scope to the circumstances of the traffic stop (Appellant's Issue #2)

If the officer had objectively reasonable suspicion, the stop is "justified at its inception;" for the stop to fully comply with the Fourth Amendment, it must also be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). Wilson argues that the officers exceeded the reasonable scope of the stop when they asked Jones and Wilson to exit the vehicle. Appellant's Br. 20. But it is well-established that officers may ask drivers and passengers to exit a vehicle during a traffic stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (explaining that officers may, during a traffic stop, ask vehicle occupants to exit for general reasons of officer safety).

---

[4] The traffic stop and Wilson's arrest occurred in April 2017. ROA.188. In November 2022, the Texas Criminal Court of Appeals issued a decision in *State v. Hardin*, 664 S.W.3d 867 (Tex. Crim. App. 2022). The court held that a driver violates § 545.060(a) when he fails to maintain his lane and does so unsafely. *Id.*at 875-76. This does not change the analysis here—an officer's reasonable but mistaken belief is evaluated at the time of the violation, not at a later date. *E.g., Graham v. Connor,* 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)) (reasonableness evaluated from the perspective of a reasonable officer on scene, rather than with the 20/20 vision of hindsight).

Wilson suggests that the request to exit the vehicle was unreasonable in his case, emphasizing that there were no inconsistent stories between Jones and Wilson and the officers provided differing accounts of the traffic stop. Appellant's Br. at 20. However, it makes good sense why the officers' accounts would not be exactly the same. Sergeant Moore was first on the scene, initiating the stop after observing the traffic violations. ROA.180, 187 (at 4:52:12 p.m. in the dashcam video, Sergeant Moore approaches Challenger on foot). Sergeant Moore witnessed Jones' immediate nervousness, as he had to tell her not to get out of the car, and he observed nervous behavior and shaking by both occupants after Jones was back in the car. ROA.181.

Deputy Miranda arrived as backup and approached the Challenger only after Jones was back in the car and talking with Sergeant Moore. ROA.187 (4:52:40 p.m.), 184. Sergeant Moore was on the driver's side of the vehicle; Deputy Miranda was on the passenger side of the vehicle— they would not have had the same view of the occupants, the seats, and the footwells. Even still, both officers reported that Wilson was visibly nervous. ROA.181 (Sergeant Moore report), 184 (Deputy Miranda report).

The dashcam video shows Sergeant Moore questioning Jones for less than a minute after Deputy Miranda's arrival. This included informing Jones of the purpose of the stop as well as standard questioning like "Where you all headed?" ROA.187 (4:53:06). This is expected and reasonable. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015). At 4:53:28 p.m., just 90 seconds into the questioning, Moore asks both occupants whether there are any weapons or anything illegal in the car—they both say "No." Sergeant Moore noticed Wilson looking around as if he was going to try and run, so Moore asked Jones to step out of the car. ROA.187 (4:53:50). Sergeant Moore and Deputy Miranda then asked Wilson to get out of the car. Wilson complied, but appeared to protest when the officers try to place handcuffs on him. But both officers saw a gun in the passenger footwell as Wilson exited the car, and Sergeant Moore says, while Deputy Miranda is handcuffing Wilson: "Why did you lie to me about the gun?" ROA.187 (4:54:21).

Wilson takes issue with the fact that Deputy Miranda did not report the same level of nervousness from Wilson that Sergeant Moore did. Appellant's Br. at 20. And he complains that Deputy Miranda did not report Wilson making furtive movements to hide the backpack in the

passenger footwell.  *Id.*  But again, Deputy Miranda arrived on the scene after Sergeant Moore began questioning the occupants, so he did not observe everything that Sergeant Moore observed.  The officers' accounts are not contradictory; rather, they are complimentary.

Wilson further suggests that it was unreasonable for the officers to remove him and Jones from the car for officer safety because the officers did not see the gun until Wilson was exiting the vehicle.  Appellant's Br. at 21.  But Sergeant Moore explained in his report that he observed Wilson looking around as if he were going to flee.  This, coupled with the furtive movements around the backpack and the occupants' nervous behavior, more than justified removing the occupants from the vehicle for safety reasons.  And the officers would have been justified in removing the occupants even without any signs of nervousness.  *See Mimms*, 434 U.S. at 111 (explaining that officers may, during a traffic stop, ask vehicle occupants to exit for general reasons of officer safety); *see also United States v. Ibarra-Sanchez*, 199 F.3d 753, 761 (5th Cir. 1999) (emphasizing that officer safety is particularly at issue when a vehicle is suspected of transporting drugs).

In sum, it was not unreasonable for the officers to ask Wilson and Jones to exit the vehicle. This request did not exceed the permissible scope of the traffic stop. The stop was properly extended after Sergeant Wilson and Deputy Miranda spotted the gun in the passenger footwell, and Wilson does not argue otherwise. *E.g., Pack*, 612 F.3d at 350.

**D.  The district court did not err in determining that Wilson as a passenger had no privacy interest in the rented Dodge Challenger and thus no standing to challenge the search.**

Wilson argues that the district court erred when it concluded that Wilson, as a passenger, lacked standing—that is, a reasonable expectation of privacy—to contest the search of the Dodge Challenger and the backpack found in the passenger footwell. Appellant's Br. at 10 (citing ROA.193-94 and *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014)). It was and is Wilson's burden to establish that he had a privacy interest in the property being searched. *See Iraheta*, 764 F.3d at 461; *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

Wilson's mere presence as passenger in the Dodge Challenger does not provide sufficient grounds for him to challenge a search of the vehicle. *Rakas*, 439 U.S. at 142-43. And his subjective expectation that he and Jones would not be discovered to be transporting drugs is also insufficient

to create a legitimate expectation of privacy. *Id.* at 143-44, n.12. Perhaps recognizing this, Wilson focuses his challenge on the search of the backpack. He argues that the backpack was his and "he was securing the backpack when Deputy Miranda approached him," establishing an expectation of privacy in that backpack. Appellant's Br. at 11. But he did not advance these arguments in the district court—indeed, he never focused on the backpack specifically. *See* ROA.101 (generally stating that Wilson did not give consent to search the vehicle, his bags, books, phone, or other items); ROA.130-32 (Supplemental Suppression Motion). After the government raised the issue of standing in its brief, Wilson chose not to reply. ROA.8.

It was Wilson's burden before the district court to prove he had a reasonable expectation of privacy in the backpack. He did not do so. The general rule applies: in the absence of countervailing facts, passengers do not have standing to contest the search of a vehicle and its contents. *Rakas*, 439 U.S. at 142-43 (petitioners failed to establish a privacy interest when they "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized"). The district court did not err in applying this rule.

**E.**    **The district court did not err in denying Wilson's motion to suppress because, even if Wilson had standing to challenge the search of the Challenger and items within, the search was reasonable.**

Wilson argues that he had a privacy interest in the backpack and suggests that the officers violated his right against unreasonable searches when they failed to get his consent to search that backpack. *See* Appellant's Br. at 11. But the officers had grounds to conduct a search of the Dodge Challenger and its contents, even absent consent. The officers spotted a firearm in the passenger footwell as Wilson was exiting the vehicle. Because Wilson and Jones had lied about the presence of weapons, Sergeant Moore decided to use his trained drug-detecting canine to conduct an exterior sniff of the vehicle. ROA.181. Wilson does not challenge the sniff, which is a reasonable action during a lawful traffic stop. *See Illinois v. Caballes*, 543 U.S. 405, 410 (2005) (a dog sniff for illegal contraband conducted during a lawful traffic stop does not violate the Fourth Amendment).

Wilson's dog alerted during the sniff, ROA.181, and this Court "has repeatedly affirmed that an alert by a drug-detecting dog provides probable cause to search." *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003). To confirm probable cause, the Court asks "whether

all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 243 (2013).

The facts here make reasonable people think that a search would reveal contraband. Sergeant Moore knew that Wilson was suspected of narcotics trafficking. ROA.135, n.7. Wilson and Jones lied to Moore about the presence of weapons in the vehicle. ROA.181. Moore's trained dog alerted to the vehicle. ROA.181. A reasonable person would believe, on these facts, that the vehicle contained narcotics. The officers therefore had probable cause to search the vehicle and its contents, including the backpack in the passenger footwell. And police may search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband, regardless of any subsequent consent or lack thereof. *United States v. Seals*, 987 F.2d 1102, 1107 (5th Cir. 1993); *Sanchez-Pena*, 336 F.3d at 444.

The search here was supported by probable cause and was reasonable. There was no Fourth Amendment violation. Thus, even if

Wilson had established a possessory interest in the backpack, his challenge to the search would fail.

**Issue II:** **The district court correctly exercised its discretion in denying Wilson's request for an evidentiary hearing.**

### A. This Court reviews for abuse of discretion.

A district court has discretion in determining whether to hold an evidentiary hearing on a motion to suppress. *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). This Court therefore reviews a district court's decision declining to hold a hearing for abuse of discretion only. *Id.; United States v. Smith*, 977 F.3d 431, 434 (5th Cir. 2020). If the Court finds that the district court abused its discretion, the Court then determines whether the error was harmless. *United States v. Clark*, 577 F.3d 273, 287 (5th Cir. 2009).

### B. The district court did not abuse its discretion in denying Wilson's request for a hearing because the facts and record were largely undisputed.

"Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *Harrelson*, 705 F.2d at 737. To support a hearing, the existing record must render it "necessary [for the court] to receive

evidence on an issue of fact." *Harrelson*, 705 F.2d at 737; *see also United States v. Lee*, 2023 WL 2573917, *3 (5th Cir. 2023) (finding that a hearing was necessary where defendant contested an agent's statement that a building was a "known stash house").

When a defendant alleges facts that do not establish a Fourth Amendment violation, there is no need for a hearing. *United States v. Alfaro*, 638 F. App'x 374, 375-76 (5th Cir. 2016) (unpublished). In *Alfaro*, the defendant alleged that an officer had stopped him for an obscured license plate and, while the computer check of the license plate was pending, the officer asked and received consent to search the vehicle. *Id.* at 375. Because the undisputed facts established that the stop and consent to search were lawful, this Court held that "Alfaro has not shown that he 'alleged sufficient facts which, if proven, would justify relief.'" *Id.* at 376 (quoting *Harrelson*, 705 F.2d at 737).

This case is similar to *Alfaro*. The facts alleged by Wilson were undisputed: the driver of the Dodge Challenger did not signal until after she entered the intersection and was turning left, and during the turn she crossed well over the dashed line that separated the two turn lanes. While there was a *legal* dispute whether these actions constituted

violations under the Texas Transportation Code, there was no factual dispute. There was also no factual dispute surrounding the initial 90 seconds of questioning during the stop, or that the officers saw a gun on the floorboard when Wilson was exiting the vehicle. Wilson argued that the officers were not justified in asking him to exit the vehicle, but as established above, that too is a legal question, not a factual one—an officer can ask occupants to exit a vehicle even when the occupants are not nervous. *See Mimms*, 434 U.S. at 111; *Maryland v. Wilson*, 519 U.S. 408, 413-14 (1997) ("an officer making a traffic stop may order passengers to get out of the car pending completion of the stop").

Wilson challenges on appeal Sergeant Moore's reports of the driver circling the parking lot before stopping and his belief that Wilson was looking around as if trying to flee. Appellant's Br. at 24. The district court here made no reference to the Challenger circling the parking lot. And while it did reference Sergeant Moore's observations, the officers could have asked the occupants of the Challenger to exit the vehicle even if the occupants had not displayed nervousness or evasive behavior. *Mimms*, 434 U.S. at 111. "The factual discrepancies alleged by [Wilson], to the extent they exist, do not call into question the bases relied upon

the district court in its ruling, and thus it was not necessary for the court to hold a hearing on those claims." *United States v. Hinojosa*, 392 F. App'x 260, 261 (5th Cir. 2010) (unpublished).

Wilson finally argues that the district court would have been able to make findings of fact regarding "Appellant's personal items" if the court had held a hearing. Appellant's Br. at 25. But Wilson was required to "allege[] sufficient facts which, if proven, would justify relief." *Harrelson*, 705 F.2d at 737. He did not discuss in his district court briefing the backpack specifically; he stated only that he did not give consent for the officers to search the vehicle or his items. ROA.101. And he chose not to file a reply even though the government raised the issue of standing in its responsive brief. Wilson "failed to present sufficient facts which, if proven, would justify relief on his suppression motion." *United States v. Guerra*, 605 F. App'x 295, 298 (5th Cir. 2015) (unpublished); *see also United States v. Thompson*, 540 F. App'x 445, 447 (5th Cir. 2013) (unpublished). The district court did not abuse its discretion in declining to hold a hearing.

Assuming, *arguendo*, that the district court erred by failing to hold an evidentiary hearing, any error was harmless. If Wilson had alleged

before the district court that he had a privacy interest in the backpack, it would not change the outcome. As explained above, the officers had probable cause to search the Dodge Challenger and its contents, regardless of consent or the lack thereof. And the inconsistencies Wilson perceives between the reports of the two officers are inconsequential: both officers reported that Wilson was nervous during initial minutes of the traffic stop, and both spotted the gun in the passenger footwell when Wilson exited the vehicle. Cross-examination of these similar accounts would not have changed the district court's conclusion. Thus, to the extent there was any error in failing to hold an evidentiary hearing, it was harmless.

# CONCLUSION

This Court should affirm.

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

*s/ Audrey Lynn Maness*
Audrey Lynn Maness
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102
Email: audrey.maness@usdoj.gov

ATTORNEYS FOR APPELLEE

# CERTIFICATE OF SERVICE

I, Assistant United States Attorney Audrey L. Maness, hereby certify that on March 15, 2024, an electronic copy of the Appellee's Brief was served by notice of electronic filing via this court's CM/ECF system upon opposing counsel, Samuel H. Winston.

Upon notification that the electronically-filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be placed in the United States Mail, postage prepaid, addressed to the Clerk.  *See* 5th Cir. R. 25.2.1, 31.1; 5th Cir. ECF filing standard E(1).

*s/ Audrey L. Maness*
Audrey L. Maness
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **6,949** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3.     This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.     This brief complies with the electronic submission of 5th Cir. R.25.2.1, because it is an exact copy of the paper document.

5.     This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security scanning program and is free of viruses.

*s/ Audrey L. Maness*
Audrey L. Maness
Assistant United States Attorney

Date: March 15, 2024