# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————————————————

## NO. 22-20100

———————————————————

## UNITED STATES OF AMERICA,
*Plaintiff-Appellee*
**v.**

## TRAVIS DEMOIS WILSON,
*Defendant-Appellant*

———————————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION,
NO. 4:18-CR-714-04

———————————————————————

## REPLY BRIEF FOR THE APPELLANT
## TRAVIS DEMOIS WILSON

———————————————————————

SAMUEL H. WINSTON, La. Bar No. 34821
JEIGH L. BRITTON, La. Bar No. 39820
Winston Bergeron, LLP
8120 Oak Street
New Orleans, Louisiana 70118
Telephone: 504-577-2500
Facsimile: 504-577-2562
E-Mail: sam@winstonbergeron.com
jeigh@winstonbergeron.com

**ATTORNEYS OF RECORD FOR APPELLANT**

# I.     TABLE OF CONTENTS

**I.     TABLE OF CONTENTS** ................................................................. ii

**II.    TABLE OF AUTHORITIES** ........................................................ iii

**III.   STATEMENT OF REPLY ISSUES** ............................................ 1

**IV.    ARGUMENT** ................................................................................ 2

  **A.  Reasonable suspicion for the traffic stop did not exist because the actions and movements of the vehicle did not violate Texas State law.** ............................................ 2

    i.     Any incidental movements of the vehicle outside of the lane were not unsafe as to trigger a violation of Texas Transportation Code § 545.060. ................................................ 2

    ii.    Using a turn signal prior to a turn but for less than 100 continuous feet from a turn lane did not amount to a traffic violation under Texas Transportation Code § 545.104. .................................... 6

  **B.  All evidence obtained as a result of the illegal search and seizure is fruit of the poisonous tree.** ........................................... 10

    i.     The scope of the traffic stop and subsequent search was not reasonable because it exceeded the purpose of the initial stop. ....... 10

    ii.    The Appellant had standing to challenge the search because he asserted a property or possessory interest in the "backpack." ......... 11

  **C.  The district court abused its discretion in failing to hold an evidentiary hearing because there were material facts in dispute.** ........................................................................................... 13

**V.     CONCLUSION** ........................................................................... 17

**VI.    CERTIFICATE OF SERVICE** ................................................... 18

**VII.   CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** .......... 19

# II. TABLE OF AUTHORITIES

**Cases**

*Mahaffey v. State*, 316 S.W.3d 633 (Tex. Crim. App. 2010) ................6, 7

*Rakas v. Illinois*, 439 U.S. 142 (1978)......................................12

*State v. Cerny*, 28 S.W.3d 796 (Tex. App. 2000) .....................................2

*State v. Dixon*, 151 S.W.3d 271, aff'd 206 S.W.3d 587 (Tex. Crim. App. 2006)..............................................................6, 7, 8

*State v. Griffin*, No. 04-02-00192-CR, 2003 WL 21018319 (Tex. App. May 7, 2003) .................................................................8

*State v. Hardin*, 664 S.W.3d 867 (Tex. Crim. App. 2022)....................2, 8

*State v. Tarvin*, 972 S.W.2d 910 (Tex. App. 1998)...................................2

*Terry v. Ohio*, 392 U.S. 1 (2004)..............................................10

*Trahan v. State*,16 S.W.3d 146 (Tex.App.-Beaumont 2000) ..................9

*United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004).......................10

*United States v. Cedillo*, 855 F. App'x 954 (5th Cir. 2021).....................2

*United States v. Harrelson*, 705 F.2d 733 (5th Cir. 1983) .....................13

*United States v. Hill*, 752 F.3d 1029 (5th Cir. 2014).......................14, 15

*United States v. Iraheta*, 764 F.3d 455 (5th Cir. 2014) ...................12, 13

*United States v. Lee*, No. 22-50320, 2023 WL 2573917 (5th Cir. Mar. 20, 2023)..................................................................13

*United States v. McKinney*, 980 F.3d 485 (5th Cir. 2020) .....................14

*United States v. Valenzuela-Godinez*, 816 F. App'x 914 (5th Cir. 2020)..2

*Wehring v. State,* 276 S.W.3d 666 (Tex. App. 2008) ...........................6, 7

**Statutes**

Tex. Transp. Code § 545.060 ......................................... passim

Tex. Transp. Code § 545.103 .........................................3, 7, 8

Tex. Transp. Code § 545.104 ......................................... passim

Tex. Transp. Code Ann. § 1.001 ............................................8

**Constitutional Provisions**

U.S. Const., Amend. IV ....................................................1, 10

# III. STATEMENT OF REPLY ISSUES

**A.** The Appellant's Fourth Amendment right against illegal searches and seizures was violated because Sgt. Moore did not have reasonable suspicion to make a traffic stop of the vehicle. Specifically, there was no violation of Texas state traffic laws because: 1) any incidental movements of the vehicle outside of the lane were not unsafe as to trigger a violation of Texas Transportation Code § 545.060; and 2) using a turn signal prior to a turn but for less than 100 continuous feet from a turn lane did not amount to a traffic violation under Texas Transportation Code § 545.104.

**B.** The Appellant had standing to challenge the illegal search because he asserted a property or possessory interest in the "backpack" and all evidence obtained as a result of the illegal search and seizure is fruit of the poisonous tree. Specifically, the scope of the traffic stop and subsequent search was not reasonable because it exceeded the purpose of the initial stop, which is in violation of the Fourth Amendment and jurisprudence on this issue.

**C.** The district court abused its discretion in failing to hold an evidentiary hearing because there were material facts in dispute.

# IV. ARGUMENT

## A. Reasonable suspicion for the traffic stop did not exist because the actions and movements of the vehicle did not violate Texas State law.

### i. Any incidental movements of the vehicle outside of the lane were not unsafe as to trigger a violation of Texas Transportation Code § 545.060.

The Government urges this Court to find that there was a violation of § 545.060 by pointing to two unpublished cases – *United States v. Valenzuela-Godinez*, 816 F. App'x 914 (5th Cir. 2020) and *United States v. Cedillo*, 855 F. App'x 954 (5th Cir. 2021). Gov't Br. at 22. However, a violation of Texas Transportation Code § 545.060 *only* occurs when the driver leaves the marked lane in an *unsafe manner. See, e.g., State v. Hardin*, 664 S.W.3d 867, 875 (Tex. Crim. App. 2022); *and State v. Cerny*, 28 S.W.3d 796, 801 (Tex. App. 2000) (holding that the evidence did not support a finding that the officer had a reasonable belief that § 545.060 had been violated because although it was established that the appellee was weaving somewhat, there was no evidence that the actions were unsafe); *and State v. Tarvin*, 972 S.W.2d 910, 912 (Tex. App. 1998).

After analyzing § 545.060 in great depth, the *Hardin* court held that "incidental movement outside a single lane will not run afoul of the

statute, but unsafe movement will." 664 S.W.3d at 875. Moreover, an interpretation of § 545.060 where any movement outside of a marked lane would trigger a violation would create a conflict with Texas Transportation Code § 545.103, which prohibits a driver from moving left or right or turning unless it can be made safely. *Id*. "Reading the two statutory subsections as interconnected and dependent on each other is the only way to give effect to not only the statute at issue but also the statute's place within the legislative scheme." *Id*.

The vehicle does not veer entirely in and out of the marked lane as the Government suggests. Gov't Br. at 19. Instead, the video shows the vehicle making a smooth left turn following the path of several cars ahead of it. ROA.187 at timestamp 4:51:07 through 4:51:24. During the turn, all vehicles in the video, including the vehicle driving the Appellant, cross over the dashed line due to the sharp curvature of the turn. *Id*. The video shows that even the officer is also unable to remain perfectly within the lane while turning. *Id*.

However, the vehicles remain as nearly as practical within the lines while making the sharp turn. *Id*. There were no other cars in the inner most turn lane and the vehicle did not cut off any other cars. *Id*. In sum,

there is no evidence that this turn was made unsafely to trigger a violation of § 545.060. *See* ROA.187 at timestamp 4:50:53 through 4:51:28.



ROA.187.



ROA.187.

Moreover, any arguments by the Government that a mistake of law by Sgt. Moore was reasonable is belied by his own testimony and understanding of the law. *See* Gov't Br. at 20-23. Specifically, Sgt. Moore testified that § 545.060 "states that if a roadway has two or more lanes and they're marked clearly, the operator of the vehicle has to maintain a single lane and cannot – and then cannot also leave that lane when it's not safe to do so." ROA.622. Sgt. Moore's statement indicates that he knew that for a violation of § 545.060 to occur, the vehicle needed to both maintain a single lane as nearly as practical *and* cannot move from the lane unless the move can be made *safely*.

As such, there was no evidence of an unsafe driving action and therefore no violation of Texas Transportation Code § 545.060.

ii. *Using a turn signal prior to a turn but for less than 100 continuous feet from a turn lane did not amount to a traffic violation under Texas Transportation Code § 545.104.*

In arguing there was reasonable suspicion for the traffic stop based on a turn signal violation, the district court and the Government erroneously rely on *Wehring v. State,* 276 S.W.3d 666 (Tex. App. 2008) and *Mahaffey v. State*, 316 S.W.3d 633 (Tex. Crim. App. 2010). Gov't Br. at 16-17. However, the defendants in these cases did not use a turn signal at all – neither before nor during the turn. *Wehring*, 276 S.W.3d at 668; *Mahaffey*, 316 S.W.3d 633. Instead of these two inapplicable decisions, *State v. Dixon*, 151 S.W.3d 271, 273, which was affirmed by the highest criminal court in Texas, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006), is more directly on point to the facts of this case. *See* Org. Br. at 16-17.

In *Dixon*, the vehicle was in a turn lane and signaled before turning but did not signal continuously for 100 feet prior to the intersection. 206 S.W.3d at 272. Similar to the present case, the officer also testified that he saw the car veer slightly over the side line and move back into its lane.

*Id.* at 274. The trial court concluded that the traffic stop was not reasonable and suppressed the evidence obtained after searching the vehicle. *Id.* at 273.

The Government attempts to dilute *Dixon*'s precedential value by pointing out that the *Mahaffey* court stated that *Dixon* did not hold that a turn signal is unnecessary when turning from a turn lane. Gov't Br. at 17. However, the Appellant is not arguing that a turn signal is not required when turning. Instead, the Appellant simply argues that the requirement of a continuous signal of 100 feet before a turn is inapplicable when there is not 100 feet of movement before the turn – such a nonsensical requirement would demand an impossibility on every single driver passing through that turn. Even the *Wehring* decision, which was based on no turn signal at all, indicated that signaling 100 feet before a turn would not be a per se traffic violation when there is less than 100 feet to signal the turn. *See Wehring v. State*, 276 S.W.3d 666, 671, fn. 2 (Tex. App. 2008). Thus, the failure to strictly comply with the 100 feet requirement does not trigger a violation of § 545.104.

Moreover, Section 545.104, which requires a continuous signal for 100 feet before a turn, should be read in conjunction with § 545.103,

which prohibits a driver from moving left or right or turning unless it can be made safely. As discussed above, the *Hardin* court analyzed § 545.060 in depth, including its history, legislative intent, and construction with the surrounding provisions. *State v. Hardin*, 664 S.W.3d 867, 873 (Tex. Crim. App. 2022). In doing so, *Hardin* found that only by reading the statute together with its surrounding subsections, including § 545.103, could courts give proper effect to the statute based on its legislative purpose. *Id*.

Similarly, § 545.104 should be read in conjunction with its immediately preceding statute § 545.103. Notably, prior to the codification of these laws which sought to organize "without making substantiative change" to the law, the content of these two statutes were once in the same provision. *See* Tex. Transp. Code Ann. § 1.001.

The holding in *Hardin* also aligns with *Dixon* and other prior cases because the debate regarding whether a signal was required 100 feet prior to a turn from a turn lane necessarily takes into consideration the lower safety concerns of turning from a turn lane. *See Dixon,* 151 S.W.3d at 273, fn. 3; *see also, e.g., State v. Griffin*, No. 04-02-00192-CR, 2003 WL 21018319, at *2 (Tex. App. May 7, 2003) (officer did not have reasonable

suspicion to make traffic stop for violations of § 545.104 and § 545.060 because the actions and movements of the vehicle were not unsafe); *and Trahan v. State*,16 S.W.3d 146 (Tex.App.-Beaumont 2000) (holding that exiting a freeway without using a turn signal was not a statutory violation because driver's exit was no unsafe).

Here, the vehicle did not have 100 continuous feet prior to the turn but still signaled prior to turning and safely turned. ROA.187 at timestamp 4:51:14 through 4:51:25. Additionally, the vehicle was in a turn lane that allowed cars to continue straight or turn left and there were no cars in the inside turn lane. *Id*.



ROA.187.

Accordingly, the district court erred in denying the Appellant's motion to suppress because Sgt. Moore lacked reasonable suspicion to conduct the traffic stop.

## B. All evidence obtained as a result of the illegal search and seizure is fruit of the poisonous tree.

### i. *The scope of the traffic stop and subsequent search was not reasonable because it exceeded the purpose of the initial stop.*

The officers' actions were not reasonable or justified at the inception of the traffic stop because there was no traffic violation as discussed above. *See Terry v. Ohio*, 392 U.S. 1, 19 (2004). The officers' actions following the initial stop were also unreasonable because they were not reasonably related in scope to the circumstances that justified the stop. *Id.* at 20. "The Fourth Amendment is concerned with ensuring that the scope of a given detention is reasonable under the totality of the circumstances." *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004). "Detention, not questioning, is the evil at which Terry 's second prong is aimed." *Id.* (internal citations omitted).

Although it is true that an officer may order an occupant out of the vehicle, Sgt. Moore reported that he had the vehicle occupants exit the vehicle based on the nervousness of the occupants. ROA.181.; Govt' Br.

at 23. As discussed in the Appellant's Original Brief and below, there is a factual question of whether the occupants of the vehicle displayed any furtive or nervous movements that could have been the basis for reasonable suspicion for the officers to extend the scope of the traffic stop. Org. Br. at 17-21. The occupants were ordered out of the car almost immediately after the stop. ROA.114-116. It was not until the Appellant exited the vehicle that Sgt. Moore noticed a portion of a gun was protruding from underneath the backpack. ROA.184, 654.

Because any evidence derived was from an illegal seizure and search, the evidence should have been suppressed as fruit of the poisonous tree. *See* Org. Br. at 21-22.

ii. *The Appellant had standing to challenge the search because he asserted a property or possessory interest in the "backpack."*

The Government improperly takes issue with the fact the Appellant did not state the "backpack specifically" when advancing his challenge to the search before the district court. Gov't Br. at 28. This Court should reject the Government's overly semantic argument. The Appellant did in fact assert a property or ownership interest right in "his bags" and his "items" ROA.101, 103. And the *only* bag taken into evidence was a brown backpack that was located in between the Appellant's feet on the

passenger side of the vehicle. ROA. 181, 183, 184. No other bags or backpacks were taken into evidence or mentioned in the police report. ROA.181, 183, 184.

The driver, Ms. Jones, was not charged with possession of a firearm that was found located underneath the backpack that was in between the Appellant's feet, even though the report notes that Ms. Jones was also a convicted felon. ROA.179-181. Moreover, an alleged statement was made by the Appellant indicating ownership of the drugs and thus ownership of the bag, but no report was generated of this statement. ROA.140. More information regarding this statement would have been available if an evidentiary hearing had been held. There are zero statements or evidence in the record that the Appellant denied or abandoned his possessory or ownership interests the bag prior to its search.

The Government mistakenly relies on *United States v. Iraheta*, 764 F.3d 455, 462 (5th Cir. 2014) to argue that the Appellant failed to assert or establish he had a property interest in the backpack. Gov't Br. at 27-28. Passengers do not have a legitimate expectation of privacy when they fail to assert a property or ownership interest in the property searched or seized. *Id.* at 461; *Rakas v. Illinois*, 439 U.S. 142 (1978). However, *Iraheta*

specifically held that the defendants did not abandon or disclaim ownership of their property prior to the search because neither denied ownership of the bag prior to its search. 764 F.3d at 462.

Likewise, the Appellant did not abandon or disclaim ownership of the bag or backpack prior to the search as discussed above. The Government is correct in asserting it is the Appellant's burden to *establish* his possessory or ownership interest in the bag or backpack. Gov't Br. at 27. Although the Appellant asserted his interests in the bag, he was not given an opportunity to establish his interests because the district court failed to hold an evidentiary hearing, which leads to the next issue.

## C. The district court abused its discretion in failing to hold an evidentiary hearing because there were material facts in dispute.

An evidentiary hearing is necessary when the defendant *alleges* sufficient facts which, if proven, would justify relief. *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (emphasis added). Those alleged facts can then be established and challenged at an evidentiary hearing. It is the Government's burden to establish reasonable suspicion.

*United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020); *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014).

In *United States v. Lee*, this Court found that an evidentiary hearing should have been held on the defendant's motion to suppress when the defendant challenged whether there was reasonable suspicion for the stop. No. 22-50320, 2023 WL 2573917, at *3 (5th Cir. Mar. 20, 2023). Specifically, the defendant disputed an officer's statement that the location where a person was seen entering the vehicle prior to the stop was a "known stash house." *Id.* at *1. This officer relayed the information to a patrol unit who performed a traffic stop of the defendant. *Id.* The trial court found that the defendant had not presented any material disputed facts and denied the defendant's motion to suppress and request for hearing. *Id.*

In overturning the trial court's ruling, this Court reasoned that although a location likelihood of criminality can factor into an officer's reasonable suspicion, there was a lack of evidence to support that the location was a known stash house. *Id.* at *2-3. Similar to *Lee*, Sgt. Moore was instructed to perform a traffic stop on the vehicle after the Appellant was seen outside a suspected drug dealer David Singleton's home.

ROA.713-719. No evidence regarding this separate investigation of Singleton was presented to the trial court.

Although the Government points out that reasonable suspicion is a legal determination, the facts used to form the basis for reasonable suspicion were disputed here. *See* Gov't Br. at 32-33; *see also* Org. Br. at 23-35. The Appellant specifically challenged the factual basis for the officer's reasonable suspicion for the initial stop and for the extended stop and search. ROA.112.; *see also* Org. Br. at 10-12.

Moreover, the argument here is not only that nervous behavior does not necessarily establish reasonable suspicion, but whether factually there was any nervous behavior. *See United States v. Hill*, 752 F.3d 1029, 1036 (5th Cir. 2014) (nervous or evasive behavior is not necessarily indicative of wrongdoing and alone does not establish reasonable suspicion). Sgt. Moore's characterization of the vehicle and occupants' actions and behavior do not align with the video footage of the stop or with Deputy Miranda's account. Org. Br. at 23-25.

For example, Sgt. Moore reported that the vehicle "continued to circle in the parking lot" and may be attempting to flee. The video footage shows that the vehicle made the first available safe turn to pull over and

did not circle the parking lot. ROA.187 at timestamp 4:51:29 through 4:52:05.

Additionally, Sgt. Moore reported that the Appellant was making furtive movements to try and conceal something and that he was visibly nervous. ROA.180-181.; s*ee also* Org. BR. at 20. No furtive or nervousness can be seen from the video footage. ROA.187 at timestamp 4:52:05 through 4:54:29. Moreover at trial, Sgt. Moore conceded that he could not actually see if the Appellant was trying to hide anything from his vantage point. ROA.181. Additionally, Deputy Miranda, who had a much better vantage point on the passenger side of vehicle of the Appellant, did not report that the Appellant made any furtive movements, nor did he testify that he observed the Appellant make any furtive movements. ROA.184. Deputy Miranda also did not report this extreme level of nervousness. ROA.184, 696-698.

The facts that form the basis of reasonable suspicion are material to the case. Because these material facts were in dispute, an evidentiary hearing was required. An evidentiary hearing would have given the Appellant the ability to cross-examine the disputed and differing

accounts of the arresting officers. Additionally, the Court could have assessed the officers' credibility.

The Government fails to cite an authority for its argument that failing to hold an evidentiary hearing was harmless. *See* Gov' Br. at 34-35. Nevertheless, the denial of an evidentiary hearing on the Appellant's motion to suppress was not harmless error. The sequence of events that led to the illegal search and seizure do not take place in a vacuum. Assuming arguendo that probable cause was developed after the K-9 sniff, it was only developed after an accumulation of unreasonable actions by officers. The Appellant would not have been detained, nor would the pistol and the contents of the bag have been discovered without the illegal traffic stop. The Appellant would likely not have been convicted without the evidence obtained from the unconstitutional search and seizure. Accordingly, the error was not harmless.

## V.   CONCLUSION

For the foregoing reasons and those reasons in Mr. Wilson's Original Appellant Brief, this Court should reverse Mr. Wilson's conviction and sentence because of the constitutional violations and the district court's errors.

Respectfully submitted,

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON, La. Bar. No. 34821
JEIGH L. BRITTON, La. Bar No. 39820
Winston Bergeron, LLP
8120 Oak Street
New Orleans, Louisiana 70118
Telephone: 504-577-2500
Facsimile: 504-577-2652
Email: sam@winstonbergeron.com
jeigh@winstonbergeron.com

## VI.   CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2024, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CMF/ECF system.

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON
Attorney for Appellant

## VII. CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,186 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word version 16.74 in Century Schoolbook 14 pt.

*/s/ Samuel H. Winston*
SAMUEL H. WINSTON
Attorney for Appellant